UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALBERT BENITEZ,

                            Plaintiff,                    **MEMORANDUM**
                                                                                     **AND ORDER**
          -against-                                                     CV 23-1327 (ARL)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
-------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      Plaintiff, Albert Benitez ("Plaintiff"), brought this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 et seq. (the "Act"), challenging a final determination by the Commissioner of the Social Security Administration ("SSA") that he was ineligible to receive Social Security disability insurance benefits. Before the Court are the parties' cross motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, Plaintiff's motion is granted, and Defendant's motion is denied.

## BACKGROUND

### I.     Procedural History

      On March 7, 2019, Plaintiff filed an application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act (the "Act"). Transcript of the Record of Proceedings ("Tr.") at 18, 241. Plaintiff subsequently amended his alleged onset date to August 26, 2020. *Id.* at 18-19, 312. In his application, Plaintiff alleged that his disability, due to heart problems, asthma, high blood pressure, panic disorder, liver disease, hepatitis C, kidney disease and anxiety, began on June 6, 2008. *Id.* at 336.

      After conducting an initial review, on October 22, 2019, the SSA denied Plaintiff's application for benefits. *Id.* at 334, 336. Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ") and a telephonic hearing was held on January 26, 2021. *Id*. at 18. On April 16, 2021, the ALJ issued a decision finding Plaintiff was not disabled. *Id*. at 18-28. Plaintiff requested a review of the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on January 4, 2023, thus the ALJ's decision became the final decision of the Commissioner. *Id*.

Plaintiff commenced the instant action on February 20, 2023, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. The administrative record was filed on May 30, 2023. ECF No. 9. On June 1, 2023, the parties consented to the jurisdiction of this Court for all purposes. ECF No. 10. On December 19, 2023, Plaintiff moved for judgment on the pleadings. ECF No. 17. Defendant cross moved for judgment on the pleadings the same day. ECF No. 19.

**II.    Factual Background**

The following facts are drawn from the parties' Joint Stipulation of Facts. ECF No. 16.

**A.  Non-Medical Evidence**

Plaintiff was 46 years old on the application date and 48 years old on the date of the ALJ's decision. Tr. at 335. He has a ninth-grade education. *Id.* at 312. Plaintiff worked performing building maintenance from March 2008 through June 2009. *Id.* at 546. He worked as a manager at a cellular phone service store from January 2010 to November 2011 and from August 2017 to June 2018, Plaintiff worked as an assistant in a nail salon. *Id.* at 546.

On August 8, 2019, Plaintiff completed a Function Report as part of his SSI claim. *Id.* at 495-505. Plaintiff reported that his daily activities included attending his methadone program and any appointments. *Id.* at 495. Plaintiff reported no trouble with personal care tasks, such as dressing, bathing, shaving, or feeding himself, and needed no reminders to complete these tasks.

*Id.* at 496-97. He did, however, sometimes need reminders to take medications. *Id.* at 497. Plaintiff relied on his wife to cook, and could prepare a sandwich or spaghetti, however, he had trouble cooking due to difficulty paying attention. *Id.* Plaintiff could travel by car and public transportation. *Id.* at 498. He shopped in stores and helped his wife shop for food. *Id.* Plaintiff reported it took him a long time to shop because he had to stop and catch his breath after a few steps. *Id.* He could pay bills, count change, and handle a savings account. *Id.* at 499. Plaintiff reported that he spent his days in bed. *Id.* He did not socialize with others. *Id.* He had trouble getting along with others, reporting that, since being released from jail in 2005, he had not been very social. *Id.* at 500.

In terms of functional limitations, Plaintiff reported he could not lift more than five pounds; stand for a long time; walk more than a few steps without stopping; sit for long; climb more than two flights of stairs; bend; or kneel. *Id.* He had no problem reaching or using his hands. *Id.* Plaintiff stated he had trouble paying attention and completing tasks. *Id.* at 501. He could follow written and spoken instructions. *Id.* at 502. He had trouble getting along with authority figures and did not like change. *Id.*

At the January 2021 administrative hearing, Plaintiff testified that he lived with his wife at a family shelter, consisting of hotel rooms. *Id.* at 311. Plaintiff testified that he was waiting for a kidney transplant and was going to start dialysis upon completion of the necessary vascular surgery. *Id.* at 312-13. Plaintiff testified that he initially did not want to undergo dialysis because his mother had experienced pain when undergoing dialysis, but did not want to die before getting a kidney transplant, and had no choice but to pursue dialysis. *Id.* at 313. In terms of daily activities, Plaintiff testified that he required assistance with dressing and showering due to difficulty standing and that his wife fed and dressed him. *Id.* at 315. As to his mental

impairments, Plaintiff testified that, because he was incarcerated for 20 years, he felt anxiety around others and could not tolerate crowded spaces, such as trains or offices.  *Id.* at 318-19.  For treatment, Plaintiff had taken medication, which helped his anxiety a little bit.  *Id.* at 319.  Plaintiff testified that he was on methadone treatment.  *Id.* at 313.  He had attended therapy with a Veterans Affairs psychiatrist, but stopped after the agency began investigating the therapist.  *Id.* at 313.  Plaintiff further testified that he had been unable to find a new psychiatrist since the COVID-19 pandemic as most providers were not taking new patients.  *Id.* at 313-14.

In terms of functional limitations, Plaintiff testified that he had trouble standing and could sit for 10-15 minutes before switching positions.  *Id.* at 315.  He could stand for about three to four minutes at one time.  *Id.* at 316.  Plaintiff testified that he had trouble using his hands due to circulatory problems.  *Id.* at 316-17.  Plaintiff related that, as of August 2020, he could no longer use public transportation due to increased back aches and pain, low energy, and "sleeping more."  *Id.* at 318.  Plaintiff relied on his wife to drive him to appointments.  *Id.* at 317. When asked about how his symptoms would affect his ability to do a sit-down job, Plaintiff testified that he relied on his wife to stand, take the bus, and "everything else," and that he did not believe an employer would allow his wife to work with him.  *Id.* at 321.

**B. Medical Evidence**

    **a. Evidence From Prior to March 7, 2019, the SSI Application Date**

In January 2017, Plaintiff was admitted into care at Mount Sinai Hospital for a hypertensive emergency and shortness of breath in the context of cocaine use.  *Id.* at 744, 759.  A transthoracic echocardiogram showed, inter alia, that Plaintiff had an ejection fraction of 47% (AR 725), and mildly reduced left ventricular systolic function.  *Id.* at 726.  A urine toxicology screening was positive for cocaine and methadone.  *Id.* at 733.  The attending physician

4

concluded that Plaintiff likely had "acute decompensation of early heart failure in [the] setting of cocaine abuse and hypertensive emergency." *Id.* at 738.  In May 2017, Plaintiff sought care at Mount Sinai Hospital for a hypertensive emergency that was "[l]ikely precipitated by cocaine use." *Id.* at 690.  The attending physician diagnosed chronic kidney disease "in the setting of persistently uncontrolled [blood pressure] due to med[ication] non compliance and intermittent substance use." *Id.* at 690.  In October 2017, Plaintiff began substance abuse counseling at Greenwich House, Inc. *Id.* at 856-57.  Throughout treatment in 2017 and 2018, Plaintiff reported ongoing use of cocaine and other substances. *Id.* at 872, 874, 877, 882.  In November 2018, Plaintiff was discharged from care after he engaged in threatening behavior toward the clinic's staff. *Id.* at 888.

    During this period, in March 2018, Plaintiff returned to Mount Sinai Hospital with complaints of chest pains. *Id.* at 697. The attending physician reviewed previous cardiovascular test results from 2017 showing Plaintiff had an ejection fraction of 47%. *Id.* at 701; 714- 16.  Chest pains in the context of cocaine use was diagnosed. *Id.* at 692.  On September 20, 2018, Plaintiff sought emergency care at Northwell Health again for chest pains. *Id.* at 938.  Attending staff noted that Plaintiff "is very noncompliant with all treatment and medical follow-ups." *Id.* at 951.  Plaintiff reported using heroin and cocaine. *Id.* at 954. The next day, Plaintiff underwent an echocardiogram, which showed, *inter alia*, a left ventricular ejection fraction of 50 to 55% and normal global left ventricular systolic function. *Id.* at 789.  A bilateral kidney ultrasound was also performed that same day that revealed normal findings. *Id.* at 796.  On September 24, Plaintiff was discharged as his blood pressure was under control. *Id.* at 1092.  He was counseled on abstaining from drug use. *Id.* at 1092-93.

5

On January 9, 2019, Plaintiff met with Jung Han, M.D., after finding out that he had stage four chronic kidney disease. *Id.* at 604.  A review of systems noted Plaintiff denied malaise, fatigue, musculoskeletal pain, weakness, depression, and anxiety. *Id.* at 604.  On exam, Plaintiff appeared healthy, well, and in no acute distress. *Id.* at 604.  He had a normal gait, no obvious disorder in mood or affect, and no pedal edema (swelling) of the extremities. *Id.* at 604.  Diagnoses included end stage chronic renal failure, hepatitis C, drug dependence, and cocaine use. *Id.* at 605.  Dr. Han continued Plaintiff's medications, ordered blood work, and planned to obtain more information about Plaintiff's drug use at a later visit, as Plaintiff "refuse[d] giving details of drug abuse" at that time. *Id.*

On February 5, 2019, Plaintiff met with nephrologist Albert Defabritus, M.D., on referral from Dr. Jung Han. *Id.* at 614.  Comorbidities included heroin use, which he stopped in 2013, and occasional cocaine use. *Id.*  Plaintiff had chronic hepatitis C, which had never been treated. *Id.* at 614.  On exam, Plaintiff was oriented, cooperative, and in no acute distress. *Id.* at 616. His blood pressure was 118/73. *Id.*  Dr. Defabritus "discussed the possibility that [Plaintiff] will need dialysis in the future," and told Plaintiff that dialysis would probably be necessary. *Id.* at 617.  He instructed Plaintiff to keep his blood pressure under control to preserve kidney functioning, and scheduled a follow-up visit for the next month. *Id.* at 617.

On February 21, Plaintiff returned to Dr. Han. *Id.* at 601.  Plaintiff denied any malaise, fatigue, weakness, musculoskeletal pain, depression, or anxiety. *Id.* at 601. On exam, he appeared healthy, well, and in no acute distress with a normal gait, no mood or affect disorder, and no pedal edema of the extremities. *Id.* at 601-02.  Dr. Han continued Plaintiff's medications and instructed him to follow-up with his nephrologist. *Id.* at 602.

On March 5, 2019, Plaintiff returned to Dr. Defabritus. *Id.* at 614. On exam, Plaintiff appeared "somewhat sedated" and "obviously under the influence of methadone." *Id.* at 616. Dr. Defabritus instructed Plaintiff to return in one week to discuss lab results. *Id.* at 617.

### b. Evidence From March 7, 2019, the SSI Application Date, Through April 16, 2021, the Date of the ALJ's Decision

On March 14, 2019, Plaintiff returned to Dr. Defabritus. *Id.* at 614. On exam, Plaintiff appeared "somewhat sedated" with elevated blood pressure, as he had not taken his blood pressure medication that day. *Id.* at 614, 616. Dr. Defabritus noted that Plaintiff's renal function was "basically stable and poor," and that Plaintiff was not symptomatic from his chronic kidney disease. *Id.* at 617. For treatment, Dr. Defabritus prescribed losartan (used to treat high blood pressure) and adjusted Plaintiff's medications. *Id.* at 618.

On August 16, 2019, Ram Ravi, M.D., conducted an internal medicine consultative examination at the Agency's request. *Id.* at 670-73. Plaintiff's medical conditions included sharp and constant back pain for 10 years, and kidney failure for one year with symptoms of fatigue, which were stable. *Id.* at 670. Daily activities included watching television, listening to the radio, and reading. *Id.* at 671. On exam, Plaintiff was in no acute distress and had a moderately antalgic gait, inability to walk on heels and toes, and discomfort with standing. *Id.* at 671. He used no assistive device. *Id.* at 671. He declined to squat or change for the exam, and Dr. Ravi noted that "portions of the exam are limited." *Id.* at 671. Plaintiff could rise from a seated position without difficulty and needed no help getting on or off of the table. *Id.* Plaintiff declined to demonstrate his lumbar spine and hip motion due to pain. *Id.* Dr. Ravi measured Plaintiff's range of motion of the cervical spine, shoulders, elbows, forearms, wrists, knees, and ankles. *Id.* Plaintiff had 5/5 strength in the upper and lower extremities; intact finger and hand dexterity; and 5/5 grip strength in both hands. *Id.* Dr. Ravi listed the following diagnoses:

7

kidney failure, back pain, hypertension, heart murmur, asthma, and hepatitis C. *Id.* at 672-73. Dr. Ravi opined that Plaintiff had no limitation in sitting. *Id.* at 673. Plaintiff had moderate limitations in standing, walking, pushing, pulling, lifting, and carrying. *Id.* Plaintiff needed to avoid bending due to back pain. *Id.* Dr. Ravi opined that Plaintiff should avoid activities requiring mild or greater exertion due to his cardiac condition and history of fatigue. *Id.* He should also avoid smoke, dust, and other respiratory irritants/triggers due to asthma. *Id.*

On August 16, 2019, Michael Kushner, Ph.D., conducted a psychological consultative examination at the Agency's request. *Id.* at 676-79. Plaintiff denied depressive symptomology. *Id.* at 676. He reported anxiety around people, and that he avoided social settings as much as possible. *Id.* at 676-77. In terms of his treatment history, Plaintiff reported a history of psychiatric hospitalizations between the 1990s and 2001. *Id.* at 676. Since 2018, he had treated with a physician. *Id.* at 676. He was enrolled in a methadone maintenance program, and used cocaine about once per month. *Id.* at 677. On exam, Plaintiff was well groomed and cooperative with adequate social skills and adequate manner of relating. *Id.* at 677. He had a coherent and goaldirected thought process; a euthymic mood; and a full range and appropriate affect. *Id.* at 677. Attention and concentration were "somewhat impaired" as Plaintiff was unable to perform serial sevens and completed five digits of a serial threes test. *Id.* at 678. Recent and remote memory was "somewhat impaired" as Plaintiff could repeat three out of three objects immediately but could not repeat three objects after a five-minute delay. *Id.* at 678. Intellectual functioning was "below average," and Plaintiff's general fund of information was "somewhat limited." *Id.* at 678. Dr. Kushner diagnosed unspecified anxiety disorder, unspecified depressive disorder, opioid dependence, and rule out cocaine dependence/abuse. *Id.* at 679. Dr. Kushner opined Plaintiff had "moderate to marked" limitation in the ability to interact adequately with

supervisors, coworkers, and the public. *Id.* at 678. Plaintiff had "[a]t least moderate" limitation in: 1) understanding, remembering, and applying complex directions and instructions; and 2) regulating emotions, controlling behavior, and maintaining wellbeing. *Id.* at 678-79. Plaintiff had "moderate" limitation in: 1) sustaining concentration to perform a task at a consistent pace; and 2) sustaining ordinary routine and regular attendance at work. *Id.* at 678. Dr. Kushner opined Plaintiff had mild limitation in: 1) understanding, remembering, and applying simple directions and instructions; 2) using reason and judgment to make work-related decisions, and 3) maintaining personal hygiene and appropriate attire. *Id.* at 678-79. Plaintiff had no limitation in being aware of hazards and taking appropriate precautions. *Id.* at 679.

On October 15, 2019, Plaintiff underwent imaging of the lumbosacral spine, which showed mild multilevel degenerative changes. *Id.* at 682.

On October 22, 2019, state agency medical consultant J. Randall, M.D., reviewed the record at the Agency's request at the initial level of review. *Id.* at 342-44. Dr. Randall reviewed the record at the time, which included Plaintiff's diagnosis of stage IV-V chronic kidney disease; Plaintiff's complaints of exertional fatigue; laboratory test results; Dr. Ravi's consultative examination; imaging of the spine showing mild degenerative changes; and an echocardiogram showing mildly reduced left ventricular systolic function. *Id.* at 344. Dr. Randall found that Plaintiff could occasionally lift and carry 10 pounds, and frequently lift and carry less than 10 pounds. *Id.* at 342. He could stand/walk two hours in an eight-hour workday, and sit about six hours in an six-hour workday. *Id.* at 342. Plaintiff could occasionally climb ramps and stairs, and ladders, ropes, or scaffolds. *Id.* at 342. Plaintiff had an unlimited ability to balance, and could occasionally stoop, kneel, crouch, and crawl. *Id.* at 342-43. Plaintiff had no manipulative

9

limitations. *Id.* at 343. He needed to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* at 343.

On October 22, 2019, state agency psychological consultant, E. Kamin, Ph.D., reviewed the record at the Agency's request, also at the initial level. *Id.* at 344-47. Dr. Kamin found that Plaintiff had moderate limitation in the following areas of mental functioning: 1) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; 2) sustaining an ordinary routine without special supervision; 3) working in coordination with or in proximity to others without being distracted by them; 4) completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; 5) interacting appropriately with the general public; 6) accepting instructions and respond appropriately to criticism from supervisors; 7) responding appropriately to changes in tire work setting; and 8) setting realistic goals or make plans independently of others. *Id.* at 344-46.

On November 30, 2019, an ultrasound of the kidneys revealed slight atrophy with increased cortical echogenicity suggestive of parenchymal renal disease. *Id.* at 911.

On July 29, 2020, state agency psychological consultant, A. Chapman, Psy.D. reviewed the record at the Agency's request on reconsideration and concurred with Dr. Kamin's ratings of noto-moderate limitation in the domains identified above. *Id.* at 363-64. On August 4, 2020, state agency medical consultant A. Periakaruppan, M.D., reviewed the record, also on reconsideration, at the Agency's request and concurred with Dr. Randall's findings. *Id.* at 359-62.

On August 25, 2020, Plaintiff met with nephrologist Charles Lang, M.D., at NYU Langone Health. *Id.* at 821. Dr. Lang noted that Plaintiff had not seen a doctor since November

of 2019. *Id.* at 821. Plaintiff reported symptoms of shortness of breath, and he denied lower extremity edema, hematuria (blood in urine), vomiting, or chest pain. *Id.* at 821. On exam, Plaintiff appeared in no acute distress with a palpable liver and no lower extremity edema. *Id.* at 824. Dr. Lang referred Plaintiff for transplant, and started him on Rocaltrol, an active form of vitamin D. *Id.* at 825.

On September 28, 2020, Plaintiff transferred mental health and substance abuse care back to Greenwich House, Inc., and met with physician's assistant ("PA") Marlene Bonilla. *Id.* at 839. Plaintiff reported using heroin and cocaine within the past week. *Id.* at 839. On exam, Plaintiff appeared alert and oriented with a normal gait, a normal mood, an appropriate affect, and fluent speech. *Id.* at 839. Plaintiff's methadone dosage was increased from 100 mg to 110 mg. *Id.* at 839. The following month, Plaintiff returned to PA Bonilla and reported his "[m]ood has been good and [he was] overall doing well." *Id.* at 840. He reported that he was not seeing a psychiatrist or taking medications for depression. *Id.* at 840. An exam showed no changes from the previous visit. *Id.* at 841. Plaintiff returned in November and reported he was applying for disability, and was treating his kidney disease. *Id.* at 1144. On exam, Plaintiff was oriented, calm, clear, and expressive. *Id.* at 1144.

On December 14, 2020, Plaintiff followed up at Greenwich House and stated that he was on a list for a kidney transplant. *Id.* at 1145. Plaintiff planned to forego dialysis due to his mother's poor outcome from dialysis. *Id.* at 1145. Plaintiff's mother died of a heart attack while on dialysis. *Id.* at 614, 783. On January 8, 2021, Plaintiff requested an increase of his methadone from his providers at Greenwich House. *Id.* at 1159. On January 11, Plaintiff returned and reported using 40-50 dollars' worth of heroin per day. *Id.* at 1160. His methadone dose was raised to 140mg daily. *Id.* at 1160.

On January 21, 2021, Valeriia Shnayder, M.D., a provider at NYU Langone Health, completed a Physical Impairment Questionnaire submitted by Plaintiff's representative. *Id.* at 1176-77. Dr. Shnayder noted Plaintiff had a diagnosis of end stage renal disease and had symptoms of fatigue and somnolence. *Id.* at 1176. The physician opined that Plaintiff's symptoms would constantly interfere with his ability to maintain attention and concentration to perform simple, work-related tasks. *Id.* at 1176. He would require breaks in excess of normal workplace breaks. *Id.* at 1176. Plaintiff could walk zero blocks. *Id.* at 1176. He could sit for 30 minutes at a time, and zero hours per workday. *Id.* at 1176. Plaintiff could not stand/walk for any minutes or hours in a workday. *Id.* at 1176. Plaintiff would need to shift positions at will and would require unscheduled breaks lasting one hour several times per day. *Id.* at 1176. Plaintiff could never lift any weight. *Id.* at 1177. He had unspecified limitation in using his fingers, hands, and arms. *Id.* at 1177. Dr. Shnayder opined that Plaintiff was not capable of working an 8-hour day, 5 days per week. *Id.* at 1177.

On February 18, 2021, Plaintiff presented to Bellevue Hospital for an evaluation for hemodialysis treatment. *Id.* at 1181. Joanelle Lugo, M.D., noted that Plaintiff had previously been seen at New York University for vein mapping on January 4, 2021, and had been referred to Bellevue for insurance related reasons. *Id.* at 1181. Pre-admission test questions noted Plaintiff had uncontrolled hypertension and liver and kidney problems. *Id.* at 1182-82. Plaintiff denied having shortness of breath when walking two to three blocks. *Id.* at 1182. He could "complete daily activities independently." *Id.* at 1182. On exam, Plaintiff was alert with a normal appearance and no edema. *Id.* Dr. Lugo planned for left upper extremity Arteriovenous ("AV") Fistula. *Id.* at 1183.

    c.  **Evidence Post-Dating the ALJ's April 16, 2021 Decision**

On December 12, 2022, physician Calogero DiMaggio, MD, authored a noted stating that, on December 9, Plaintiff had been admitted to NYU Langone Tisch Hospital for initiation of intermittent hemodialysis. *Id.* at 8. Plaintiff remained admitted through December 12 for continued treatment and hemodialysis initiation, and outpatient hemodialysis would be established prior to discharge. *Id.* at 8.

## DISCUSSION

### I. Standard of Review

#### A. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." *Rojas v. Berryhill,* 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019*)* (citing *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995)). "The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6)." *Id.* The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g**).**

#### B. Review of the ALJ's Decision

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. Nov. 16, 1998) (citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)); *see also Provisero* v. *Colvin,* No. 14-CV-1830, 2016 WL

4186980, at *9 (E.D.N.Y. Aug. 8, 2016); *Smith* v. *Colvin,* No. 14-CV-5868, 2016 WL 5395841, at *13  (E.D.N.Y. Sep. 27, 2016).  Thus, although the reviewing court is obliged to "examine the entire record, weighing the evidence on both sides to ensure that the claim has been fairly evaluated," *Nascimento v. Colvin,* 90 F. Supp. 3d 47, 51 (E.D.N.Y. 2015), "the Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Provisero,* 2016 WL 4186980, at *9 (quoting *Koffsky v. Apfel,* 26 F. Supp. 475, 478 (E.D.N.Y. Nov. 16, 1998)).

### C.  Eligibility for Disability Benefits

To be eligible for disability benefits under the Act, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months."  42 U.S.C. § 423(d)(1)(A); *see Burgess v. Astrue,* 537 F.3d 117, 119 (2d Cir. 2008); *Wider v. Colvin*, 245 F. Supp. 3d 381, 387 (E.D.N.Y. 2017); *Nascimento,* 90 F. Supp. 3d at 51.  The Act further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *see Shaw v. Chater,* 221 F.3d 126, 131-32 (2d Cir. 2000); *Nascimento,* 90 F. Supp. 3d at 51; *Marinello v. Coom'r of Soc. Sec.,* 98 F. Supp. 3d 588, 592-93 (E.D.N.Y. 2015).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

14

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant can perform.

*Telavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012). The claimant bears the burden of proof at steps one through four of the sequential inquiry, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Id.*; *Nascimento,* 90 F. Supp. 3d at 51. In making these determinations, the Commissioner "must consider four factors '(1) the objective medical facts; (2) diagnosis or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; (4) the claimant's educational background, age, and work experience.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)(per curiam)).

    **II.   Analysis**

        **A. The ALJ's Decision**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 7, 2019. *Id*. at 20. At step two, the ALJ determined that the Plaintiff's asthma, end stage renal disease, lumbar degenerative disc disease, hypertension, unspecified anxiety disorder, and unspecified depressive disorder (20 CFR 416.920(c)) constitute severe impairments. The ALJ noted that Plaintiff's hypertension and history of substance abuse disorder did not qualify as severe impairments. *Id*. at 21. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of

15

impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R §§ 404.152(d), 404.1525 and 404.1526). *Id*. at 21. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 416.967(a) except Claimant can sit for six hours, stand/walk a total of two hours, lift/carry up to ten pounds occasionally and five pounds frequently. Claimant can occasionally climb, stoop, kneel, crouch and/or crawl. Claimant must avoid concentrated exposure to respiratory irritants. Claimant cannot perform complex jobs but can remember, understand and carry out instructions necessary to perform unskilled work. Claimant can adapt to routine changes in the workplace and can maintain attention and concentration for simple, repetitive and rote work. Claimant can respond appropriately to supervision and have occasional close interpersonal contact with supervisors and coworkers. Claimant cannot have close interpersonal face to face contact with the general public. *Id.* at 22-23. At step four, the ALJ concluded that due to his impairments, Plaintiff could not perform his past work. *Id.* at 26-27. At step five, the ALJ found that the Plaintiff was capable of performing other jobs in the local and national economy, including Table worker, Final assembler, and Finisher. As a result, the ALJ found Plaintiff was not disabled under the Act. *Id*. at 27-28.

Plaintiff moves for judgement on the pleadings, arguing that the ALJ (1) failed to adequately consider Plaintiff's change in condition and proceeding to dialysis treatment before considering the relevant physical health opinion evidence and subjective complaints and declining to develop the record further and (2) failed to adequately evaluate the physical health opinion evidence in accordance with regulation. ECF No. 17 at 1. Defendant cross-moves for judgement on the pleadings, arguing that ALJ properly considered Plaintiff's kidney disease treatment and recommendations for hemodialysis and/or a transplant in the future and that the

16

ALJ properly considered the most important regulatory factors – supportability and consistency – when partially discounting Dr. Ravi's opinion. ECF No. 18 at 3 & 9-10.

### B. Evaluation of the Medical Evidence

Upon careful review of the administrative record and the ALJ's decision, the undersigned finds that the ALJ's decision is not properly supported by the medical evidence.

According to Plaintiff, his "condition developed such that i) in February and March 2019, his renal conditions did not require dialysis and were asymptomatic (AR 617), ii) in September 2020, Plaintiff was put on a list for a kidney transplant, but was foregoing dialysis due to his mother's poor outcome from dialysis (AR 1145), and iii) in February 2021 Plaintiff reached the point where he agreed to dialysis despite his concern (AR 1181-83)." Pl. Mem. at 3. Plaintiff argues that because the ALJ failed to consider the need for dialysis in his evaluation of the opinion evidence this matter should be remanded for the development of the record with some form of professional opinion addressed to this development. *Id.* at 3-4. In response, Defendant contends that since the record is clear that the ALJ's relied on the DDI reports from October 2019, and August 2020, prior to the amended onset date, in his RFC there is no need to develop more opinion evidence. Def. Mem. at 7. The Court disagrees.

"'Medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability.'" *Moore v. Comm'r of Soc. Sec.*, No. 1:16-CV-270 (DJS), 2017 U.S. Dist. LEXIS 54251, 2017 WL 1323460, *9 (N.D.N.Y. Apr. 10, 2017) (quoting *Velez v. Colvin*, [No. 3:13-CV-171], 2016 U.S. Dist. LEXIS 29077, 2016 WL 884635, at *5 (D. Conn. Mar. 8, 2016) (quoting *Carway v. Colvin*, 2014 U.S. Dist. LEXIS 67013, 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014))) (other citation omitted). Indeed, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to

support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), aff'd, 652 F. App'x 25 (2d Cir. 2016).  Medical opinions are rendered "stale" by a "new significant diagnosis" or "significant deterioration" in the plaintiff's condition.  *Andrea G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-01253, 2022 U.S. Dist. LEXIS 12587, 2022 WL 204400, at *7 (N.D.N.Y. Jan. 24, 2022); *see also Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 U.S. Dist. LEXIS 72784, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("a medical opinion may be stale if it does not account for the [plaintiff's] deteriorating condition.").  Here, the opinions from October 2019 and August 2020 make no mention of Plaintiff's deteriorating condition.

That is not to say the medical records from before the onset date must be disregarded, "medical records from before the amended onset date are still records which the ALJ can, and should, consider." *Melissa S. v. Comm'r of Soc. Sec.*, No. 3:20-cv-1536 (TWD), 2022 U.S. Dist. LEXIS 248325 (N.D.N.Y. Dec. 7, 2022); *see also Mills v. Astrue*, No. 5:11-cv-955 (GLS), 2012 U.S. Dist. LEXIS 180644, 2012 WL 6681685, at *2 (N.D.N.Y. Dec. 21, 2012) ("Notably, medical records which predate the claimant's alleged onset date can 'prove to be relevant to a claimant's later condition provided that there is indication that the symptoms experienced extended in duration into the relevant time period.'") (citation omitted); *Binder v. Comm'r of Soc. Sec.,* No. 5:15-CV-738 (NAM), 2016 WL 4079533, at *4 (N.D.N.Y. July 29, 2016) ("[T]his Court does not conclude that every opinion provided before an alleged onset date is irrelevant"). "[E]vidence from before or after the relevant time period often provides necessary context for a disability claim and, if so, an ALJ cannot simply ignore it." *Cheri Lee H. v. Comm'r of Soc. Sec.*, No. 5:19-CV-10, 2020 U.S. Dist. LEXIS 3394, 2020 WL 109007, at *5 (N.D.N.Y. Jan. 9, 2020). Here, however, the ALJ found the opinions of two DDS consultants, issued in 2019 and early 2020, both of which pre-date the amended onset date of August 26, 2020, to be "persuasive as to

18

the physical limits opined as they are generally consistent with the treating history and claimant's current complaints; however, there is nothing in the record supporting limits greater than mild in any category of mental functioning, except for interacting with others." The ALJ discounted the only opinion after the onset date finding that "[t]he record is devoid of positive clinical findings or diagnostic reports that would support such an extreme degree of limitations." Tr. at 26. The ALJ also noted that "Dr. Shnayder opines these limits are only present as of January 21, 2021 and not from the amended onset date; therefore, there is no indication that such limitations would last for twelve months from then." *Id*. Remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [Plaintiff's] functioning on which the ALJ relied" and the ALJ failed to fully analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020); *see also Laura Anne H. v. Saul,* No. 6:20-CV-397, 2021 U.S. Dist. LEXIS 185142, 2021 WL 4440345, at \*6 (N.D.N.Y. Sept. 28, 2021). "[T]he ALJ's failure to consider whether the older evidence was stale warrants remand because the newer evidence showed that [Plaintiff's] condition had significantly changed within the relevant period." *Id*.

Moreover, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel[.]" *Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 558 (2d Cir. 2020) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)). Here, the ALJ recognized there was a gap in the medical history, noting that the January 2021 opinion is not persuasive because "there is no indication that such limitations would last for twelve months from then." *Id*. Despite noting the lack of evidence, the ALJ did nothing to further develop the record. Failing to adequately develop the record is an independent ground for vacating the ALJ's decision and remanding for

19

further findings. *See Rosa*, 168 F.3d at 83 (finding remand "particularly appropriate" where the ALJ failed to obtain adequate information from treating physicians and potentially relevant information from other doctors).[1]

For all these reasons, the Court remands this matter to the Commissioner for further proceedings. The Clerk of Court is directed to close the case.

Dated: Central Islip, New York  
March 28, 2024

SO ORDERED:

_____/s/_____  
ARLENE R. LINDSAY  
United States Magistrate Judge

---

[1] Because the Court finds that remand is necessary to address the ALJ's reliance on opinions which predate the amended onset date and the ALJ's failure to develop the record, the Court does not consider Plaintiff's argument that the ALJ failed to adequately evaluate the physical health opinion evidence in accordance with regulation.